No. 22-10710

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

MICHAEL CLOUD,

*Plaintiff-Appellee,*

*v.*

THE BERT BELL/PETE ROZELLE NFL PLAYER
RETIREMENT PLAN,

*Defendant-Appellant.*

———————————————

On Appeal from the United States District Court for the
Northern District of Texas, No. 3:20-CV-1277

## REPLY BRIEF OF DEFENDANT-APPELLANT

Michael L. Junk
Edward J. Meehan
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue N.W.
Washington, D.C. 20006


Nolan C. Knight
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, TX 75201

Pratik A. Shah
James E. Tysse
AKIN GUMP STRAUSS HAUER
 & FELD LLP
2001 K Street N.W.
Washington, D.C. 20006


Michael Weisbuch
AKIN GUMP STRAUSS HAUER
 & FELD LLP
100 Pine Street, Suite 3200
San Francisco, CA 94111

*Counsel for Defendant-Appellant The Bert Bell/Pete Rozelle NFL
Player Retirement Plan*

## CERTIFICATE OF INTERESTED PERSONS

No. 21-10710, *Cloud v. NFL Player Retirement Plan*

Undersigned counsel certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

**Defendant-Appellant**
The Bert Bell/Pete Rozelle NFL Player
Retirement Plan

**Counsel for Defendant-Appellant**
Michael L. Junk
Edward J. Meehan
GROOM LAW GROUP, CHARTERED

Dill Mitchell McFarland
Nolan C. Knight
Toni L. Anderson
MUNSCH HARDT KOPF & HARR, P.C.

Pratik A. Shah
James E. Tysse
Michael Weisbuch
AKIN GUMP STRAUSS HAUER & FELD LLP

**Plaintiff-Appellee**
Michael Cloud

**Counsel for Plaintiff-Appellee**
Christian S. Dennie
Matthew Nis Leerberg
Kip D. Nelson
FOX ROTHSCHILD, L.L.P.

Paul J. Vitanza
BARLOW GARSEK & SIMON

*s/Pratik A. Shah*
Pratik A. Shah

*Counsel for Defendant-Appellant*
*The Bert Bell/Pete Rozelle NFL*
*Player Retirement Plan*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................i

INTRODUCTION ................................................................... 1

ARGUMENT ....................................................................... 4

    I.    PLAINTIFF'S ADMINISTRATIVE APPEAL WAS UNTIMELY .................................................................... 4

    II.    THE BOARD'S DENIAL OF RECLASSIFICATION WAS CORRECT UNDER ANY STANDARD OF REVIEW ............................................................... 9

        A.    Plaintiff Did Not Establish "Changed Circumstances" .......................................... 10

        B.    Plaintiff Did Not Satisfy The "Shortly After" Requirement ................................................ 14

    III.    THE BOARD CONDUCTED A "FULL AND FAIR" REVIEW ............................................................. 21

        A.    The District Court Committed Legal Error ................. 23

        B.    Plaintiff Does Not, And Could Not, Defend The District Court's "Meeting Minutes" Theory ................. 25

        C.    The Board Complied With ERISA And Its Regulations .................................................. 26

        D.    Decisions In Inapposite Cases Have No Bearing On Whether Plaintiff Received A Full And Fair Review Here. ................................................ 32

CONCLUSION ................................................................... 33

# TABLE OF AUTHORITIES

<u>CASES</u>:

*Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
  694 F.3d 557 (5th Cir. 2012)...............................................................30

*Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*,
  No. 01-CV-2072-J-LSP, 2003 WL 27394697 (S.D. Cal. July
  24, 2003)..........................................................................................20
  410 F.3d 1173 (9th Cir. 2005)............................................................33

*Chorosevic v. MetLife Choices*,
  600 F.3d 934 (8th Cir. 2010)................................................................9

*Clark v. CertainTeed Salaried Pension Plan*,
  860 F. App'x 337 (5th Cir. 2021).......................................................22

*Conkright v. Frommert*,
  559 U.S. 506 (2010)...........................................................................25

*Crosby v. Louisiana Health Serv. & Indem. Co.*,
  647 F.3d 258 (5th Cir. 2011).........................................................13, 26

*Custer v. Murphy Oil USA, Inc.*,
  503 F.3d 415 (5th Cir. 2007)................................................................7

*Ellis v. Liberty Life Assurance Co. of Bos.*,
  394 F.3d 262 (5th Cir. 2004)..............................................................12

*Geddes v. United Staffing All. Emp. Med. Plan*,
  469 F.3d 919 (10th Cir. 2006).......................................................30, 33

*Gomez v. Ericsson, Inc.*,
  828 F.3d 367 (5th Cir. 2016)..............................................................11

*Hagen v. Aetna Ins. Co.*,
  808 F.3d 1022 (5th Cir. 2015)............................................................26

*Kent v. United of Omaha Life Ins. Co.*,
  96 F.3d 803 (6th Cir. 1996)................................................................22

*Klotz v. Xerox Corp.*,
    332 F. App'x 668 (2d Cir. 2009) ........................................................ 8

*Krauss v. Oxford Health Plans, Inc.*,
    517 F.3d 614 (2d Cir. 2008) ............................................................ 22

*Lafleur v. Louisiana Health Serv. & Indem. Co.*,
    563 F.3d 148 (5th Cir. 2009) .................................................. 22, 29, 31

*Madden v. ITT Long Term Disability Plan for Salaried Emps.*,
    914 F.2d 1279 (9th Cir. 1990) ......................................................... 30

*McCorkle v. Metropolitan Life Ins. Co.*,
    757 F.3d 452 (5th Cir. 2014) ............................................ 10, 18, 19, 20

*Metropolitan Life Ins. Co. v. Glenn*,
    554 U.S. 105 (2008) ................................................................... 25, 27

*Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*,
    986 F.2d 580 (1st Cir. 1993) .......................................................... 30

*Rollins v. Home Depot USA*,
    8 F.4th 393 (5th Cir. 2021) ............................................................ 23

*TracFone Wireless, Inc. v. SCS Supply Chain LLC*,
    330 F.R.D. 613 (S.D. Fla. 2019) ........................................................ 8

*Vega v. National Life Ins. Servs., Inc.*,
    188 F.3d 287 (5th Cir. 1999) .......................................................... 27

*Willett v. Blue Cross & Blue Shield of Ala.*,
    953 F.2d 1335 (11th Cir. 1992) ........................................................ 30

## Other Authorities:

29 C.F.R.
    § 2520.104b-1(b)(1) ...................................................................... 8

Fed. R. App. P. 25(c)(1)(C) .................................................................. 8

Restatement (Second) of Trusts § 171 cmt. d (1959) .......................... 30

## INTRODUCTION

Plaintiff badly distorts the administrative record on which the Board properly denied reclassification and doubles down on the district court's substitution of its own judgment for that of the Board—in defiance of established judicial review principles under ERISA. Plaintiff's response only underscores the three independent grounds for reversing the district court's decision as a matter of law (even accepting its factual findings): (1) the clear untimeliness of his administrative appeal, (2) his failure to satisfy the substantive requirements for reclassification to the very highest level of Plan benefits, and (3) the Board's compliance with ERISA's specific procedural requirements.

First, the administrative record establishes that Plaintiff's appeal to the Board was untimely under the Plan's 180-day deadline. Plaintiff does not contest that the evidence before the Board, including the record of receipt from FedEx maintained in the ordinary course of business, shows "proof of delivery" to Plaintiff himself on March 4, 2016. Plaintiff instead argues that the Plan "stipulated away" timeliness at trial. That is false. The purported "stipulation" merely recited Plaintiff's position (in lieu of his live testimony at trial) that he received the letter on March

1

6, 2016—not that FedEx's contrary confirmation of Plaintiff's receipt two days earlier was incorrect. That is why not even the district court relied on any such "stipulation," which contradicts the Plan's consistent position all along (including at trial after the quoted colloquy). Plaintiff's late appeal to the Board should have been the end of this case.

Second, on the merits, Plaintiff's threadbare legal arguments—and own version of the facts—confirm that the Board's denial of reclassification was not an abuse of discretion (or even a close call). Plaintiff does not meaningfully dispute that he administratively forfeited any argument that he satisfied the gatekeeping "changed circumstances" requirement—which he cannot satisfy on the merits regardless. Indeed, Plaintiff's inability to identify any relevant "changed circumstance" reveals that he really seeks a (long foregone) appeal of the Committee's 2014 award of Inactive A rather than Active Football benefits. And because Plaintiff asserts (contrary to the district court) that he did not become "totally and permanently" (T&P) disabled before "the conclusion of the 2005 NFL season" in January 2006—*i.e.*, more than twelve months after his disability first arose in October 2004—Plaintiff could not have satisfied the mandatory "shortly after" requirement then or now.

2

Plaintiff therefore relies on the district court's invocation of the "Special Rules" provision—which he never raised before the Board and which longstanding authorities (including both Plan guidance and a prior court decision) clarify does *not* excuse claimants from satisfying the "shortly after" requirement. Under any standard of review, Plaintiff is simply not entitled to reclassification.

Finally, accepting either of those independent grounds for denial obviates any need for this Court to reach the "full and fair review" claim that occupies the bulk of Plaintiff's brief. Because no amount of process can render Plaintiff's appeal timely or alter his clear ineligibility for reclassification, remand to the Board would be a useless formality. But his procedural claim has no merit, either. Despite Plaintiff's attempt to transform this appeal into a dispute over the district court's factual findings, making up and misconstruing ERISA procedural requirements is *legal* error. And Plaintiff's facially inaccurate description of plan processes cannot salvage the district court's improper findings that the Board violated various unwritten procedural rules.

This Court should reverse on any or all of the three enumerated grounds, and order entry of judgment in the Plan's favor.

## ARGUMENT

## I.   PLAINTIFF'S ADMINISTRATIVE APPEAL WAS UNTIMELY

Substantial evidence, including the Plan's business records from FedEx, amply supports the Board's finding that the Committee's decision letter was delivered to and received by Plaintiff on March 4, 2016—182 days before his appeal was filed.  Def's Br. 30-31; *see* ROA.692-697 (delivery data including "Proof of delivery *recipient*" (emphasis added)); ROA.12566 (district court finding "Committee decision letters are sent to players via FedEx shipping *with a signature required*" (emphasis added)).  Tellingly, Plaintiff does *not* defend the district court's strained conclusion that the above somehow was not "concrete evidence" because it was "internally maintained" and contained a typo in Plaintiff's last name.  ROA.12627-12628; *see* Def's Br. 31-32.  His alternative timeliness arguments—which the district court did not adopt—are meritless.

1.  Plaintiff suggests, for the first time on appeal (at 34-35), that the district court's timeliness analysis was (apparently) superfluous, on the ground that the Plan "expressly stipulated" that Plaintiff received the Committee's letter on March 6 rather than March 4.  That is absurd.

4

Plaintiff made no such argument below. And the district court did not recognize any such stipulation in its order. ROA.12628-12629. Indeed, in its oral ruling two days after the purported stipulation, the district court observed that the Plan "to this date \*\*\* allege[s] vigorously that [Plaintiff] busted his deadline to file an appeal" based "on [the] FedEx data entry." ROA.14050:23-25, 14051:5-6.

In reality, the trial record snippet that Plaintiff quotes reveals that the parties' agreed only on what "*plaintiff's* position" was, Br. 34 (quoting ROA.13751) (emphasis added), to avoid the need to call Plaintiff to testify. The surrounding context confirms that the parties were merely "clarifying what [an] errata" submitted by Plaintiff had "intended to convey." ROA.13752:5-6. During his deposition, Plaintiff testified that he did not recall when he received the letter. ROA.10432:5-12. His errata then stated that "after looking at a calendar, I recall the date I received the appeal was Sunday, March 6th, 2016." ROA.13752:9-11; *see* Def's Br. 18 n.4. In lieu of calling Plaintiff to testify, the parties thus stipulated that "plaintiff's position [was] that a FedEx was picked up, or received, by Mr. Cloud on the doorstep on March 6th, 2016, which was a

Sunday," but Plaintiff took "no position *** on when that was dropped off." ROA.13751:18-21.

The district court and the parties plainly understood that the stipulation served that limited purpose. The court noted both (i) Plaintiff's "position" "with that stipulation" that his appeal was "within the 180 days," and (ii) the Plan's "position that they're relying on a FedEx receipt" to support the Board's finding that his appeal was filed two days late. ROA.13753:11-12, 16. The Plan's trial counsel immediately reiterated that "the FedEx receipt in the Administrative Record reflects and supports the signature" upon receipt. ROA.13754:2-4. The following day, the Plan's trial counsel continued to press the same argument—referring to the "C-l-o-u-c" typo in the FedEx data "under proof of delivery recipient" and asking the court "to take judicial notice that *** the letter C is immediately next to the letter D" on any "device or keyboard." ROA.13904:6-8, 9-11. As for Plaintiff, his counsel argued during closing that there was "no evidence showing a signature" that would indicate "when [Plaintiff] received the papers" because "there is no 'M. Clouc.'" ROA.13976:22-13977:5-8.

In short, neither the parties nor the district court ever understood (or even implied) that the Plan entered into a "dispositive stipulation" (Br. 35) as to the date of "receipt" for no apparent reason—and in direct contravention of the Plan's consistent untimeliness objection.

**2.** Plaintiff raises (at 35-36) additional timeliness arguments that the district court did not adopt, either.  Contrary to his puzzling statement that "the Plan never identified what records" showed untimeliness, the Plan repeatedly pointed to a "spreadsheet of FedEx shipping data maintained and created by the Benefits Office using information downloaded from the FedEx website." *E.g.*, ROA.12627 (district court opinion).[1]

Plaintiff also argues in passing (at 36) that "delivery by FedEx is improper" under the relevant regulation.  But that regulation requires delivery "reasonably calculated to ensure actual receipt," *Custer v.*

---

[1] Plaintiff asserts that "the tracking number *** was nonexistent and invalid," Br. 35 (quotations omitted), but does not dispute that the FedEx data was downloaded in the regular course of business by the Plan's Benefits Office.  ROA.12628 (district court opinion).  The district court did not find the number invalid, and evidence before the court showed that Plaintiff could not run the *2016* tracking number through the FedEx website in *2021* because delivery information is available on the website for just 90 days after delivery.  ROA.10915.

*Murphy Oil USA, Inc.*, 503 F.3d 415, 419-420 (5th Cir. 2007) (quoting 29 C.F.R. § 2520.104b-1(b)(1)), and FedEx signature delivery easily satisfies that test, *see, e.g., TracFone Wireless, Inc. v. SCS Supply Chain LLC*, 330 F.R.D. 613, 616 (S.D. Fla. 2019) (FedEx delivery "reasonably calculated to insure receipt" of subpoena); FED. R. APP. P. 25(c)(1)(C) (papers filed in courts of appeals may be served "by third-party commercial carrier[s] [*e.g.*, FedEx] for delivery within 3 days"); *see also Klotz v. Xerox Corp.*, 332 F. App'x 668, 670 (2d Cir. 2009) ("[A]dministrators have discretion to determine the appropriate delivery method in a given case.").

Finally, invoking "minutes of the Board meeting" and similar materials outside the final written decision itself, Plaintiff asserts in conclusory fashion (at 36) that Board members "never decided that [his] application was late." But he does not address the many reasons why that inquiry into what individual Board members "actually contemplated" is legally improper—or the record evidence, consistent with the Board's official decision, that makes clear Board members (in

8

addition to their advisors) *did* contemplate untimeliness.  *See* Def's Br. 32-37; pp. 23, 25-26, *infra*.[2]

## II. THE BOARD'S DENIAL OF RECLASSIFICATION WAS CORRECT UNDER ANY STANDARD OF REVIEW

Even assuming Plaintiff's application for reclassification was timely, it still failed for multiple reasons—as indicated by Plaintiff's superficial treatment of the central eligibility questions in this case.  *See* Pl.'s Br. 41-45.  Plaintiff was required to show by "clear and convincing evidence" that, "because of changed circumstances" since his 2014 benefits award, he was eligible for the highest level of Plan benefits, *i.e.*, he had a disability that arose while he was an active player and caused him to be "[T&P] disabled 'shortly after'" it "first" arose.  ROA.200, 205 (Plan requirements for Active Football benefits and reclassification).  But (A) Plaintiff forfeited any argument that he could show changed circumstances and could not satisfy that standard anyway; and

---

[2] Plaintiff does not make *amici's* arguments that the Board's supposed delay in sending its decision letter obviated his earlier obligation to meet the Plan's deadline to appeal from the Committee to the Board—or lessens the standard of review.  FIS Br. 9-10.  For good reason:  Although *amici* cite inapposite cases discussing delays that impacted a claimant's ability to seek review, here there is no such risk because Plaintiff had *already* missed the appeal deadline.  *See, e.g.*, *Chorosevic v. MetLife Choices*, 600 F.3d 934, 944-945 (8th Cir. 2010).

(B) Plaintiff also forfeited any argument against applying the "shortly after" requirement, which he likewise could not satisfy. Although either of those grounds was easily sufficient to affirm, the district court "turned the deference afforded to plan administrators flatly on its head" by ignoring Plaintiff's administrative forfeitures, minimizing evidence that required denial, and rejecting the Board's "reasonable *** interpretation" of Plan terms. *McCorkle v. Metropolitan Life Ins. Co.*, 757 F.3d 452, 459 (5th Cir. 2014).

## A.     Plaintiff Did Not Establish "Changed Circumstances"

Plaintiff's attempt to walk back his administrative forfeiture of the "changed circumstances" requirement fails. Unlike an initial application for benefits classification, *reclassification* of a benefit award required Plaintiff to demonstrate eligibility for a new benefit class "because of changed circumstances" since his original 2014 benefits award, which Plaintiff never appealed. ROA.205. Plaintiff's 2016 application asserted (incorrectly) that he "met all requirements" for Active Football benefits, Pl's Br. 41, but did not assert that he met the requirements for *reclassification* based on "changed circumstances." On the contrary, Plaintiff repeatedly requested in his administrative appeal letter that the

10

"changed circumstances" "requirement be waived" in light of his condition. ROA.660. Nothing in the Plan contemplates such a waiver. *See* Def's Br. 48 & n.5, 68. Because Plaintiff forfeited his "changed circumstances" argument, the district court erred by considering it. *Gomez v. Ericsson, Inc.*, 828 F.3d 367, 374 (5th Cir. 2016).[3]

Forfeiture aside, Plaintiff's attack on the Board's reading of "changed circumstances" falls flat. The Board's past interpretations have consistently required a new or different impairment, and the Plan itself requires entitlement to a new benefits category "because of" such changes. *See* Def's Br. 53-54; ROA.205. Neither the absence of an express "changed circumstances" definition in the Plan, nor testimony that the Board "can make reasonable inferences as to what 'changed circumstances' mean[s] in a particular case," indicates that the Board failed to give the phrase a uniform construction. ROA.13855:11-12; *see*

---

[3] Plaintiff also claims (in his background section, Br. 10) that he argued to the Board "he fit within one of the Plan's exceptions in which changed circumstances are not required." But the administrative record shows otherwise. Plaintiff did not assert that he fit any such "exception[]"—and none exists. ROA.205 (Plan requires "changed circumstances" for all reclassification applications). Instead, he argued for an exception to a *different* reclassification requirement: the 42-month limitations period, not at issue here. *See* Def's Br. 48 n.5.

ROA.15881:16 (similar testimony that "the precedent that's been established by cases" the Board has decided has refined the meaning of "changed circumstances"); Pl's Br. 42. And Plaintiff never explains what was wrong with the Board's interpretation *in this case*. Plaintiff still fails to "offer a different definition, *** identify any genuine inconsistency with other Plan provisions, or cite unexpected costs associated with the Board's interpretation." Def's Br. 54 (citing *Ellis v. Liberty Life Assurance Co. of Bos.*, 394 F.3d 262, 269-270 (5th Cir. 2004)). At a minimum, and as every court to have considered the question has held, the Board's interpretation was not an abuse of discretion. *Id.* at 50-51.

Under any plausible interpretation, Plaintiff did not present changed circumstances that could entitle him to Active Football benefits. As previously noted (and still unrebutted), the only "new" information in Plaintiff's 2016 application was Dr. John Cronin's 2012 critique of another doctor's 2011 exam findings (all pre-dating Plaintiff's 2014 application) and a letter quoting Plaintiff's own account of his post-concussion symptoms. Def's Br. 51. Like the district court, Plaintiff relies (at 42) on his 2016 application's reference to "affective disorder." But Plaintiff ignores that his 2014 application for benefits *already*

expressly relied on Plaintiff's "affective mental disorder" and incorporated the Social Security Administration (SSA) award referencing Plaintiff's "affective disorder." ROA.267 (2014 application cover letter), ROA.274 (SSA finding).

Plaintiff also attempts to rely on deposition testimony stating that Plaintiff "flipped the switch" between 2014 and 2016. *See* Br. 41 (citing ROA.16351). But that testimony was obviously not before the Board— and judicial review is not "a second chance to produce evidence." *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011). In any event, Plaintiff could not be eligible for Active Football benefits "because of" events between 2014 and 2016. ROA.205. By definition, such recently "changed circumstances" could not show that Plaintiff became T&P disabled "shortly after" his October 2004 concussion a decade earlier.

In reality, Plaintiff's application for "reclassification" was a dressed-up appeal of the Committee's 2014 award of Inactive A (but not Active Football) benefits that Plaintiff never pursued. *E.g.*, Pl's Br. 8-9 (arguing Committee should have awarded Active Football benefits in 2014). Each of Plaintiff's arguments regarding his purported eligibility

for Active Football benefits could have been—but was not—raised in an earlier appeal to the Board. Plaintiff cannot get a second bite at the apple by invoking purported changes that could not possibly entitle him to Active Football benefits. ROA.205 (reclassification requires eligibility for benefits "because of" changed circumstances).

### B.    Plaintiff Did Not Satisfy The "Shortly After" Requirement

Plaintiff's application for reclassification to Active Football benefits fails for yet another reason: Plaintiff's concessions on appeal confirm that he did not become T&P disabled "shortly after"—*i.e.*, within 12 months of when—his disability first arose. Presumably that is why Plaintiff (although represented by counsel) never appealed the Committee's 2014 determination that Plaintiff failed to satisfy the "shortly after" requirement. *See* ROA.452.

1. On Plaintiff's own account, he was not T&P disabled until more than twelve months after his October 2004 concussion. Plaintiff argued before the Plan, and the district court accepted, that his disability first arose in October 2004. *See* ROA.459 (application for reclassification stating disability "arose" on "October 31, 2004"); ROA.659-660 (appeal letter to Board stating disability "arose in October 2004"); ROA.12554

(district court characterizing October 31, 2004 concussion as "triggering event"); ROA.12625 (district court adopting Plaintiff's theory "that his psychological and psychiatric disorders arose 'immediately after' the October 31, 2004, helmet-to-helmet collision"). On appeal, Plaintiff concedes that he became T&P disabled no earlier than "the conclusion of the 2005 NFL season" in January 2006—more than twelve months later. Pl's. Br. 43; *see id.* at 3 ("By the end of the 2005 NFL season, Cloud's injuries had rendered him totally and permanently disabled."). Nor, contrary to the district court's opinion, ROA.12624, could Plaintiff have been T&P disabled in the meantime given that he continued to play in professional football games (among other reasons), *see* Def's Br. 60, 63; ROA.14040:18-19 (trial concession that a player cannot be T&P disabled "and play in the NFL"). The undisputed facts thus establish Plaintiff's ineligibility for Active Football benefits.

Seeking to avoid that result, Plaintiff tries a new theory. He states (at 43) that he "became [T&P] disabled as a result of 'cumulative mental disorders' that occurred 'shortly after' injuries suffered through the 2005 NFL season." But that contradicts the district court's factual finding (based on both parties' representations) that Plaintiff's October 31, 2004

concussion was the "triggering event." ROA.12554.[4] It also contradicts

the theory that Plaintiff presented to the Plan. *See* ROA.459 (application

for reclassification), ROA.660 (appeal letter to Board). Plaintiff *still* does

not meaningfully contest that his disability first "arose" in October 2004.

*E.g.*, Br. 2 ("Most significantly, [Plaintiff] suffered a crippling helmet-to-

helmet concussion during an NFL game on October 31, 2004," and

"'significant physical and cognitive problems occurred immediately after

this collision.'" (quoting ROA.14350)).

Under the Plan's plain terms, the "shortly after" period thus began

on that date, not when Plaintiff's disability changed or worsened.

ROA.200 (shortly after period begins when disability "first arises").[5]

Other T&P benefits categories that are "more liberal by design" may

encompass such a sequence of worsening injuries. *See* Def's Br. 12;

---

[4] When describing the purported injuries after October 2004, Plaintiff cites evidence that the district court held it could not consider for merits purposes. *See* Br. 2 (citing ROA.20211-20212, 20384 (testimony and report of Dr. Joseph Wu)); ROA.11111 ("Dr. Wu's testimony and the aforementioned exhibits will not be considered for *** the merits of the claim itself." (quotations omitted)).

[5] Plaintiff attempts to rely on Board member testimony suggesting Plaintiff was not required to have become T&P disabled until a later date, Br. 43, but Plaintiff fails to point out that the Board member corrected that testimony. ROA.15945.

ROA.200 (describing T&P categories).    For example, the Inactive A category covers Plaintiff's precise situation.    *See* ROA.200 (player qualifies for Inactive A Benefits if he is T&P disabled and applies for benefits "within fifteen (15) years after the end of the Player's last credited season"). But Active Football, the most restrictive category, does not.

Even putting all that aside, overwhelming evidence in the administrative record supports the Board's finding that Plaintiff was not T&P disabled within "any conceivable" shortly after period, including one measured from the end of Plaintiff's playing career.    ROA.687 (Board decision letter).    The Board was aware of Plaintiff's representation to the SSA that he became T&P disabled beginning in December 2008 and the resulting SSA finding on which Plaintiff repeatedly relied in his 2014 application for benefits and 2016 application for reclassification.    *See* ROA.265, 267 (noting SSA award and disability "onset date of **December 31, 2008**" (bold in original)), ROA.272 (SSA finding attached to 2014 application), ROA.456, 459 (noting SSA award), ROA.467 (SSA finding attached to 2016 application), ROA.662 (2016 appeal letter to Board noting SSA award).    The Board was also aware of Plaintiff's

17

contemporaneous medical reports and work activities. Def's Br. 61 (reviewing evidence). Those categories constitute *at least* substantial evidence sufficient to uphold the Board's finding—especially where the competing evidence is Plaintiff's representations and doctors' reports from years after the "shortly after" period ended. *See id.* at 61, 63; *see also McCorkle*, 757 F.3d at 457 (court may reject Board's finding only if there is no "rational connection between the known facts and the decision"). Without addressing the full range of evidence, all Plaintiff can muster is that the SSA finding was "not binding," Pl's Br. 43—but that does not preclude the Board from reasonably relying on it, *see* Def's Br. 64.

**2.** Following the district court's lead, Plaintiff attempts to read the "shortly after" requirement out of the Plan by arguing that it is excused under the "Special Rules" provision. But he never disputes that he forfeited that argument as well. *See* Def's Br. 55.[6]

---

[6] Indeed, the "Special Rules" argument is doubly forfeited: Plaintiff failed to raise it before the Board in his 2016 reclassification application, *and* he never appealed to the Board the denial of Active Football benefits from his 2014 application—even though the same "Special Rules" provision existed then. In fact, Plaintiff disclaimed the "Special Rules" as "N/A" in both his 2014 and 2016 applications. ROA.265, 459.

In any event, the Board has long interpreted Section 5.4(b)'s "Special Rules" provision *not* to eliminate Section 5.3(a)'s "shortly after" requirement. As the Plan's 2005 Summary Plan Description (which Plaintiff himself received, *see* ROA.858) explained:

> A total and permanent disability resulting from a psychological/psychiatric disorder also may qualify for benefits in the "Active Football" or "Football Degenerative" categories *if the requirements of either of these categories are otherwise met* and the psychological/psychiatric disorder \*\*\* is caused by or relates to a head injury (or injuries) sustained in NFL football activities[.]

ROA.11474 (emphasis added).

This Court defers to the Board's interpretation of the Plan, not the district court's. *See McCorkle*, 757 F.3d at 459. So long as the Board has "reasonably" construed any "ambiguities" in the Plan, its interpretation must prevail. *Id.* Here, the Board's interpretation was not merely reasonable, but correct.

Plaintiff parrots the district court's reasoning—that Section 5.3(a) is "subject to" Section 5.4(b)'s Special Rules—without elaboration. Pl's Br. 44-45; *see* ROA.12618. But the Board's interpretation is fully consistent with that language. As the Plan has explained, Section 5.4(b) "condition[s], affect[s], and modifie[s]" Section 5.3(a) by narrowing

19

(rather than broadening) Section 5.3(a)'s reach.    *See* Def's Br. 58.
Specifically, Section 5.4(b) excludes players with psychological or
psychiatric disabilities from Section 5.3(a)'s purview except when such
disabilities arise from football head injuries.    That has no bearing on the
"shortly after" requirement.    Plaintiff's conclusory statements about
"what the Plan language says," Pl's Br. 44, ignore Section 5.4(b)'s
language referring to eligibility "under the provisions of Section 5.3(a),"
which include the "shortly after" requirement.    ROA.201; *see* Def's Br.
55-59.  At the very least, the district court erred when it "finely pars[ed]
the plan's language" and rejected the Plan's "reasonable" construction.
*McCorkle*, 757 F.3d at 459 (alteration in original).

Plaintiff does not even address other court authority holding that
the Board's interpretation "follow[s] the plain meaning" of the Plan.  *Boyd
v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, No. 01-CV-2072-J-LSP,
2003 WL 27394697, at *3 (S.D. Cal. July 24, 2003).  Nor does Plaintiff
address the Plan's longstanding "Summary Plan Description" guidance.
*See* p. 19, *supra*.    Those unrebutted authorities reinforce the
reasonableness of the conclusion that the Special Rules do not excuse the
"shortly after" requirement.

In essence, Plaintiff seeks a judicial amendment of the Plan. But only the players' representatives in the National Football League Players Association (NFLPA) and the clubs' representatives in the NFL Management Council (NFLMC) can amend the Plan via collective bargaining—and they frequently do. In the years since the Board denied Plaintiff's application for reclassification, for example, the NFLPA and NFLMC have replaced the "shortly after" requirement for Active Football benefits with a liberalized requirement that a claimant apply for benefits within 18-months of ceasing to be an active player (though Plaintiff would not qualify even under that new standard). That negotiation process—not judicial misconstruction—is the solution to any perceived unfairness in the terms of the Plan.

## III.   THE BOARD CONDUCTED A "FULL AND FAIR" REVIEW

Because Plaintiff's response confirms that his administrative appeal was untimely and that he was otherwise plainly ineligible for reclassification to Active Football benefits, there is no need to reach Plaintiff's "full and fair review" claim. This Court does not require the "useless formality" of a procedural remand when, regardless of any additional process, "the plaintiff is not covered under the terms of the

[plan]." *Lafleur v. Louisiana Health Serv. & Indem. Co.*, 563 F.3d 148, 158 n.22 (5th Cir. 2009) (alterations omitted); *see, e.g., Clark v. CertainTeed Salaried Pension Plan*, 860 F. App'x 337, 340 (5th Cir. 2021) (remand would be "useless formality" where "no amount of review can change the fact that [the plaintiff] is ineligible for benefits"); *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (2d Cir. 2008) ("[W]e are confident that administrative remand would be futile."); *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6th Cir. 1996) (remand "useless formality" where "much, if not all, the objective medical evidence supports the conclusion that plaintiff was not disabled").

In any event, Plaintiff's procedural claim fails in multiple respects. The Board complied fully with all relevant procedural rules—and at least "substantially complied" with them. *See* Def's Br. 38-40; *Lafleur*, 563 F.3d at 154. The district court was able to reach a different conclusion only by inventing new rules and misinterpreting others.[7]

---

[7] For the same reasons, the district court erred in awarding benefits outright. Remand (at most) would be the appropriate remedy on Plaintiff's procedural claim unless "it would be unreasonable for the plan administrator to deny the application for benefits on *any* ground." *Lafleur*, 563 F.3d at 158 (emphasis added). Moreover, Plaintiff does not address—and thus concedes—that the district court erred in awarding retroactive benefits based on the date of his initial application for T&P

## A.     The District Court Committed Legal Error

As a threshold matter, Plaintiff seeks to portray the district court's decision as factbound.  But as explained below, the district court actually erred *legally* by imposing various non-existent procedural "requirements."  To be clear, the court compounded those errors by relying on clearly erroneous factual findings throughout its opinion. *E.g.*, Def's Br. 35-36 (Board considered untimeliness); *id.* at 40-41 (Board considered failure to show changed circumstances).  But the court's fundamental mistake was concluding those findings had any legal significance under ERISA, its implementing regulations, or the terms of the Plan.

For his part, Plaintiff strays far afield from even the district court's factual findings by describing the record in ways that are misleading—if not flat-out wrong.  For example, Plaintiff contends that "Board members are not made aware of disability benefits cases at all until they report for

_____

benefits, rather than the date of his application for reclassification.  Def's Br. 68-69; *see, e.g.*, *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by *** failing to adequately brief the argument on appeal.").

the Board meeting," Br. 11, but the page he cites says literally the opposite:

> Q:   So am I correct that you're not made aware that there are disability cases until you show up at the board meeting?
>
> A.   *No.* They're *** put on the website and we're made aware that there were disability cases, and we know that there'[s] going to be disability cases at every meeting.

ROA.13845:14-18 (emphasis added).

Other examples abound. Plaintiff implies that Board members never "discuss[]" or "analy[ze]" any individual cases, Br. 5-6, despite extensive testimony and other evidence that the Board members discuss cases in "separate pre-meeting[s]"—and come to considered decisions on those cases—before the final Board meeting in which the formal votes occur. Def's Br. 13 (listing unrebutted record citations). Plaintiff contends that "Board members had no knowledge of Cloud's appeal prior to the meeting and did not review documents about his appeal," Br. 11— even though the cited page, which talks about review processes generally, says nothing of the sort. *See* ROA.15878. And needless to say, Board members did not "admit[]" or testify that they "knew" that they "violated the Plan." Pl's Br. 15-16, 28. These and other misstatements show that

Plaintiff's skewed characterizations bear little resemblance to the Plan's actual process—and thus should not distract from the district court's legal errors.

### B.    Plaintiff Does Not, And Could Not, Defend The District Court's "Meeting Minutes" Theory

"ERISA law [is] already complicated enough without adding 'special procedural *** rules' to the mix." *Conkright v. Frommert*, 559 U.S. 506, 513 (2010) (quoting *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 116-117 (2008)). Yet throughout its opinion, the district court legally erred by engaging in an impermissible inquiry into the grounds for denial that Board members "actually contemplated" based on meeting minutes and other ambiguous notes, rather than the Board's official decision. *See* Def's Br. 32-35, 40-41. Although Plaintiff criticizes (at 13) how the minutes were prepared and argues (at 36) based on those minutes that the Board did not "review" timeliness, Plaintiff does not attempt to connect those assertions to any ERISA procedural rule—and none exists.

Indeed, "the scope of judicial review" is "strictly limit[ed]" precisely so that courts do not "review *** the motivations behind every plan administrator's discretionary decisions," and thereby "seriously undermine ERISA's goal of resolving claims efficiently and

inexpensively." *Crosby*, 647 F.3d at 264; *see also Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1026 (5th Cir. 2015) (similar).  A rule that Board members must discuss each ground for denial at a formal Board meeting would "encourage[] costly litigation," "discourage[] efficient resolution of issues at the plan administration level," and "discourage employers from offering plans" in the first place.  American Benefits Council Br. 7, 9 (quotations and citation omitted); *see also* Def's Br. 34-35.

### C.    The Board Complied With ERISA And Its Regulations

Under the governing regulations, the Board and its advisors adequately reviewed Plaintiff's application, as reflected in the Board's decision letter setting forth several legitimate—and well-supported— ground for denial.  ROA.686-688.  Plaintiff argues (at 23-25) that the Board violated ERISA because Board members did not read every page in the administrative record, deferred to their advisors, and failed to give Plaintiff a medical exam.  Each argument fails.

*First*, although the Board must "take[] into account" all information in a player's file, Plaintiff can point to nothing in ERISA or the Plan that (i) prevents the Board from delegating record review to advisors, or (ii) requires the Board or its advisors to review literally every page of the

record, no matter how immaterial. Def's Br. 42. Plaintiff does not dispute that, if the rule adopted by the district court existed, every claimant denied benefits could sue and obtain discovery on whether plan administrators (or at least their advisors) reviewed all pages of the record—no matter how well supported the stated grounds for denial. *Id.* at 41-43. That can't be right. *See* American Benefits Council Br. 13-14.

Nor was the Board required to request additional documentation from Plaintiff or his NFL employers, or notify Plaintiff that additional information was required, *see* Pl's Br. 24, when such information could not possibly have impacted the Board's decision. *E.g.*, ROA.199 (Board may require player to provide documents or information when "necessary to decide [his] *** appeal"); *see also Vega v. National Life Ins. Servs., Inc.*, 188 F.3d 287, 298 (5th Cir. 1999) (en banc) (Board has no duty to "conduct a reasonable investigation" or "generate evidence relevant to deciding [a] claim"), *overruled on other grounds by Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).[8]

---

[8] Although Plaintiff argues that the Plan withheld his medical records (Br. 14), the district court's opinion did not address that (abandoned) claim—presumably because, even after far-flung discovery and a six-day trial, Plaintiff never identified any such records.

Beyond that predicate legal error, Plaintiff misstates the district court's factual findings on the point in various ways. For example, for the proposition that the Board "knew" it "violated the plan," Plaintiff cites testimony from disability staff (not a Board member) agreeing that the Board has a duty to review the record but not opining on the legal question whether such review entails reading every page (however immaterial). *See* ROA.13178-1379.

Nor did the district court find that advisors formally denied Plaintiff's application for reclassification "*before* the Board members knew anything about it." Pl's Br. 25. For support, Plaintiff cites communications and summary documents reflecting advisor *recommendations* leading up to the separate pre-meetings between NFLPA/NFLMC Board members and their respective advisors, as well as the official Board meeting where decisions were finalized. *See* ROA.19901 (email between benefits coordinator and NFLPA and NFLMC Board advisors), ROA.20069, 20071, 20074 (email between NFLPA benefits associate and NFLPA Board advisor indicating that Plaintiff's application should be denied for failure to show changed circumstances), ROA.20686 (NFLPA Board advisor email indicating

same); *see also* ROA.12588-12589 (district court describing communications). That is like saying a judge's law clerk "denied" an appeal by recommending denial in a bench memo.

Board members testified that they reviewed cases before the final Board meetings (including on the Plan's website where the administrative record was posted and during the separate pre-meetings with their advisors), but could not remember doing so for Plaintiff's case specifically. ROA.13361-13363, 13845-13846, 15878. Their inability to recall details about a single case (out of hundreds each year) *after more than five years had passed* is unsurprising—and all the more reason to reject a rule that requires looking behind the official grounds for denial.

*Second*, the Board did not improperly defer to its advisors. Such advisors "can participate in (rather than conduct)" two levels of review. *Lafleur*, 563 F.3d at 157. The district court did not find that an advisor "conduct[ed]" *either* level of administrative review here. Def's Br. 44-45.

Plaintiff instead relies on inapposite rules and cases that govern how a fiduciary may delegate part or all of its "discretionary authority."

Pl's Br. 25.[9]   But here, the Board did not delegate any fiduciary responsibility; it retained "the ultimate decision on benefits" while using its "discretion under the [P]lan" to delegate tasks to "agents [who] assist in that determination" during a review process that culminates with the Board meeting. *Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 694 F.3d 557, 568 (5th Cir. 2012); *see* ROA.217 (Plan provision stating Board can delegate to and rely on advisors); *see also Geddes v. United Staffing All. Emp. Med. Plan*, 469 F.3d 919, 925 (10th Cir. 2006) (Even "absent specific authorizing language[,] *** a fiduciary may delegate the performance of certain tasks 'which it is unreasonable to require him personally to perform.'"   (quoting RESTATEMENT (SECOND) OF TRUSTS § 171 cmt. d (1959)).

Plaintiff also argues (at 26) that the Board could not have "made its own decision" because its denial letter did not include enough detail.   But

---

[9] *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 582-584 (1st Cir. 1993) (plan administrator who denied claim lacked discretionary authority and was not acting as delegate of plan fiduciary); *Willett v. Blue Cross & Blue Shield of Ala.*, 953 F.2d 1335, 1340 (11th Cir. 1992) (plan delegated "fiduciary responsibility" of "[p]roviding notice of the discontinuation or suspension of coverage"); *Madden v. ITT Long Term Disability Plan for Salaried Emps.*, 914 F.2d 1279, 1284 (9th Cir. 1990) (plan "named [a separate entity] as Plan administrator" and gave it "authority to determine eligibility for benefits").

the decision letter itself refutes that contention.   ROA.686-688.   It "reviewed the specific grounds for the initial adverse benefits decision, *** stated the specific *** reasons for the adverse determination, *** cited the pertinent plan provisions[,] *** [and] notified Plaintiff of his right to obtain records and bring this lawsuit." Def's Br. 39 (quotations and citations omitted).   That is all ERISA requires.   Plaintiff never explains how the Board's denial letter deprived him of a "meaningful review" or otherwise makes this one of the "rare[]" cases where a plan administrator fails to "substantially comply." *Lafleur*, 563 F.3d at 154, 157.

*Finally*, the district court erred in finding that the Board was required to give Plaintiff a medical exam, when none of the grounds for denial depended on any medical judgment.   A medical exam could not have rendered Plaintiff's application timely, negated his forfeitures of dispositive issues, or produced evidence material to his eligibility for Active Football benefits. *See* Def's Br. 45-47. Plaintiff argues (at 28) that a medical exam was warranted based on changes in Plaintiff's "cognitive impairments and psychological condition" following his 2014 benefits award.   But proving such changes—necessarily arising after 2014—could

not alter Plaintiff's failure to satisfy the "shortly after" requirement, which necessitated the onset of T&P disability within 12 months of when that disability first arose in October 2004 (more than a decade earlier). *See* pp. 14-16, *supra*. Plaintiff's bald assertion that the Board's denial "should have" involved a medical judgment is just another thinly veiled request for a judicial revision of the Plan. Pl's Br. 28.

## D.     Decisions In Inapposite Cases Have No Bearing On Whether Plaintiff Received A Full And Fair Review Here

Having failed to identify any genuine violation of an ERISA rule, Plaintiff resorts to citing a handful of inapposite cases reversing Plan benefits decisions over the past 37 years. Pl's Br. 29-33. Of course, such cases do not reflect the countless claims the Plan has processed without issue, or the many decisions (including from this Circuit) upholding the Plan's processes, interpretations, and findings. *See* Def's Br. 66 n.9 (collecting cases). Not one of the cases that Plaintiff cites concerns a benefits application that was untimely or facially defective (or both). Nor does any approve of probing Board members' "actual" motivations for denying a meritless claim. The district court's intrusive and misleading look behind the Plan's processes to revive (and then grant) such a claim is truly unprecedented.

Plaintiff also argues that these cases reveal conduct not "becoming of a fiduciary." Br. 31. But that argument rests on the mistaken assumption that acting "in the best interests of the participants" (*id.* at 1) requires relaxing (if not wholly ignoring) the eligibility requirements for Plaintiff's reclassification to the Plan's highest benefit level. The Plan's obligation is to act in the interest of not just *Plaintiff*, but *all* former NFL players by only "pay[ing] legitimate claims" and "guard[ing] the assets of the [Plan] from improper claims[.]" *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005) (third alteration in original). That is what the Board members appointed by the NFLPA and NFLMC strive to do in each case—and what they did here.

## CONCLUSION

This Court should reverse the district court's judgment and order entry of judgment in the Plan's favor.

Respectfully submitted,

_s/ Pratik A. Shah_

Michael L. Junk
Edward J. Meehan
GROOM LAW GROUP, CHARTERED

Nolan C. Knight
MUNSCH HARDT KOPF & HARR, P.C.

Pratik A. Shah
James E. Tysse
Michael Weisbuch
AKIN GUMP STRAUSS HAUER
 & FELD LLP

*Counsel for Defendant-Appellant The Bert Belle/Pete Rozelle NFL Player Retirement Plan*

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2023, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the CM/ECF system.

*s/Pratik A. Shah*
Pratik A. Shah

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 32(a)(7) because it contains 6,493 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-point Century Schoolbook font.

*s/Pratik A. Shah*
Pratik A. Shah

March 9, 2023