# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 15, 2024

Lyle W. Cayce
Clerk

No. 22-10710

Michael Cloud,

*Plaintiff—Appellee,*

*versus*

The Bert Bell/Pete Rozelle NFL Player Retirement
Plan,

*Defendant—Appellant.*

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-1277

Before Willett, Engelhardt, and Oldham, *Circuit Judges.*

Don R. Willett, *Circuit Judge*:

Our prior panel opinion, *Cloud v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, 83 F.4th 423 (5th Cir. 2023), is WITHDRAWN and the following opinion is SUBSTITUTED therefor:

Football, by design, is a collision-based sport played with ferocity and velocity. It is thus surprising that, of the four major professional sports leagues in North America (football, baseball, basketball, and hockey), the

No. 22-10710

frequency of injuries is lowest for football players—though not the severity.[1] Other sports (with longer seasons) have the *most* injuries, just not the *worst* injuries. This ERISA case concerns the National Football League's retirement plan, which provides disability pay to hobbled NFL veterans whose playing days are over but who are still living with debilitating, often degenerative injuries to brains and bodies, including neurotrauma.

The claimant, former NFL running back Michael Cloud, suffered multiple concussions during his eight-year career, leaving him physically, neurologically, and psychologically debilitated. There is no dispute that Cloud is entitled to disability benefits under the NFL Plan—the only question is what *level* of benefits. In 2010, Cloud was awarded one set of benefits. Four years later, after the Social Security Administration found him entitled to disability benefits, Cloud went back to the NFL Plan and sought a higher tier of benefits. Cloud was awarded a higher tier, but not the *highest* tier. He did not appeal this denial of top-level benefits—though he could have, and indeed *should* have. Two years later, Cloud again filed a claim to be reclassified at the most generous level of disability pay. The NFL Plan denied reclassification on several grounds, most relevantly the absence of "changed circumstances" between Cloud's 2014 claim and his 2016 claim. Cloud sued the NFL Plan, arguing that it violated the Employee Retirement Income Security Act when it denied reclassification.

The district court granted discovery and held a six-day bench trial. In a sternly worded 84-page opinion condemning the NFL Plan's "rubber stamp" review process, the court ordered a near doubling of Cloud's annual disability benefits (from $135,000 to $265,000), concluding that the Plan's

---

[1] *See* Garrett S. Bullock, et al., *Temporal trends in incidence of time-loss injuries in four male North American professional sports over 13 seasons*, 11 Sᴄɪ. Rᴇᴘ. 8278 (2021).

review board denied Cloud a "full and fair review," wrongly denied benefits owed to him under the Plan, and erred by finding Cloud's administrative appeal untimely. The district court awarded top-level benefits under the Plan instead of remanding for another round at the administrative level.

We commend the district court for its thorough findings—devastating in detail—which expose the NFL Plan's disturbing lack of safeguards to ensure fair and meaningful review of disability claims brought by former players who suffered incapacitating on-the-field injuries, including severe head trauma. Nevertheless, we are compelled to hold that the district court erred in awarding top-level benefits to Cloud. Although the NFL Plan's review board may well have denied Cloud a full and fair review, and although Cloud is probably entitled to the highest level of disability pay, he is not entitled to *reclassification* to that top tier because he cannot show changed circumstances between his 2014 application and his 2016 claim for reclassification—which was denied and which he did not appeal. We therefore REVERSE the district court's judgment and REMAND with instructions to enter judgment in favor of the NFL Plan.

I

A

Michael Cloud was a running back for three NFL teams from 1999 to 2006—the Kansas City Chiefs, the New England Patriots (with whom Cloud won a Super Bowl ring), and the New York Giants—until Cloud's on-the-field injuries forced him into retirement. He suffered multiple concussions during those years. On Halloween Sunday 2004, Cloud came off the bench to score two touchdowns for the Giants in a 34–13 victory over the Minnesota Vikings. But he also suffered a devastating helmet-to-helmet collision that inflicted yet another concussion. After that collision, Cloud bounced back

No. 22-10710

and forth between the Giants and Patriots until his contract expired in 2006. Cloud's 2005–2006 season was his last in the NFL.[2]

B

Cloud is a participant in the NFL's Plan for disabled veterans. The Plan is a welfare-benefit plan governed by ERISA and jointly administered by both the players' union and NFL club owners.[3] The Plan provides various categories of disability benefits.

Two categories are relevant to our discussion:

First, the Plan distinguishes between players who were disabled in the "line of duty" (LOD) and those who are "totally and permanently" disabled (T&P). If the Social Security Administration (SSA) determines that a player is eligible for disability benefits, the player is presumptively entitled to T&P status under the Plan.

Second, § 5.3 of the Plan classifies T&P benefits as either active or inactive. "Active Football" benefits are the highest tier of disability benefits. That provision is found in § 5.3(a) of the Plan. The amount awarded under "Active Football" benefits is greater than the amount awarded under an "Inactive" category of benefits—there's roughly a $130,000/year difference. Around 1,000 players receive "Inactive A" benefits (which

_____

[2] It merits mention that Cloud's history of repeated concussions predated the NFL's public acknowledgment in 2009 that concussions can have lasting neurocognitive consequences. For years, the NFL had denied and downplayed the long-term effects of concussions, but in 2009 it introduced (and has since strengthened) return-to-play protocols, forbidding players from returning to the field until they have been cleared by a medical professional.

[3] *Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 694 F.3d 557, 560 (5th Cir. 2012). Today, the Plan is part of a 2020 collective bargaining agreement between the NFL and the NFL Players Association.

No. 22-10710

Cloud currently receives), while only 30 players receive Active Football benefits (which Cloud wants).

As relevant to Cloud's case, there are two ways to get Active Football benefits, and they are spelled out in §§ 5.3(a) and 5.4(b) of the Plan.

Under § 5.3(a), a disabled player can qualify for Active Football benefits "if the disability(ies) results from League football activities, arises while the Player is an Active Player, and causes the Player to be totally and permanently disabled 'shortly after' the disability(ies) first arises." The phrase "shortly after" is key under § 5.3(a). If total and permanent disability arises within six months after the disability first arises, the "shortly after" requirement is met. On the other hand, if total and permanent disability arises more than twelve months after the disability first arises, the "shortly after" requirement is not satisfied. That's door number one.

Door number two is § 5.4(b), which grants Active Football benefits to players who suffer a concussion. It provides that "a total and permanent disability as a result of psychological/psychiatric disorder may be awarded under the provisions of Section 5.3(a) if the requirements for a total and permanent disability are otherwise met and the psychological/psychiatric disorder . . . is caused by or relates to a head injury (or injuries) sustained by a Player arising out of League football activities (e.g., repetitive concussions)."

Another important part of the Plan instrument is how claims for benefits are handled. The Plan, like many ERISA plans, has two stages of administrative review of a claim for benefits: an initial determination and then an administrative review—basically, an appeal. The Disability Initial Claims Committee conducts the initial benefits determination. The Retirement Board reviews the Committee's decisions on appeal. The Board (six members split evenly between the NFL and the NFL Players Association)

is the Plan administrator and fiduciary of the Plan for ERISA purposes. The Plan document gives the Committee and the Board discretion to award benefits and to interpret the Plan's terms. In the exercise of this discretion, both the Committee and the Board "will consider all information in the Player's administrative record."

At least, that's what the Plan document says.

## C

In practice things were far from ideal—to put it mildly. The Plan's Benefits Office is in charge of day-to-day administration of Plan benefits. When a player applies for compensation, the benefits coordinator reaches out to the Groom Law Group, outside counsel for the Plan. Starting in 2016, because of the lack of manpower at the Benefits Office, Groom began taking on more and more responsibility in Plan administration, including preparing decision letters for the Committee.

The Board reviews Committee denials and makes its formal benefits decisions at quarterly meetings, which occur over two days. On the first day, "Board advisors, Groom lawyers, and Benefits Office staff members meet to review all disability cases," but "Board members do not attend these meetings" themselves. On the second day, however, Board members informally discuss cases with their advisors and with Groom lawyers before their formal decisions meeting.

The record paints a bleak picture of how the Board handles appeals. "At the formal Board meeting, there is no open discussion about cases. Instead, the Board will deny or approve blocks of 50 or more cases 'en masse' based on the reasons discussed in the 'caucuses' or pre-meetings." "After the formal Board meeting, Groom prepares decision letters for the Board. Terms that are not explicitly defined in the Plan document are defined in the

No. 22-10710

decision letters prepared by Groom." "Board members do not see or review the letters before they are sent to the player."

While the Board's *advisors* typically know about the cases set to be reviewed at the quarterly meetings, "Board members are not aware of such cases until they get to the Board meeting." This is because "[t]he Board delegates to the advisors the responsibility to review the facts of the case, the medical records, and the specifics relating to dates." "Board members do not review *all* of the documents in the administrative record." And the Board's advisors "have not been specifically directed to review all medical records submitted with player applications." Each appeal's record may include "hundreds or thousands of pages." Consequently, Board members "do not know what their advisors reviewed."

## D

At issue in this appeal are the Board's proceedings relating to Cloud's request for reclassification to Active Football benefits in 2016. But some background is needed to fully grasp what happened here.

Recall that Cloud suffered a concussion from a helmet-to-helmet collision during a 2004 Giants–Vikings game. At this point, the NFL had no concussion protocol. After the concussion, Cloud was released from the Giants, then the Patriots, and then was asked not to re-sign with the Giants. His NFL career ended in 2006. Over the next decade, Cloud submitted several applications for Plan benefits—in 2009, 2014, and 2016—as well as a claim for Social Security disability benefits in 2014.

Cloud applied for LOD benefits in 2009. Although the Committee denied him benefits, the Board reversed and granted him LOD benefits in 2010. Later, Cloud applied for SSA benefits and was awarded disability benefits on June 18, 2014. The SSA determined that Cloud was disabled with

an onset date of December 31, 2008, because he had not engaged in substantial gainful activity since that date.

After receiving the SSA award, Cloud went back to the Plan and applied for T&P benefits (instead of LOD benefits). Remember, under the Plan, an SSA disability award is a presumptive qualification for T&P benefits. The Committee granted T&P benefits, but under the Inactive A category. The Committee declined to award Active Football benefits because Cloud did not become T&P disabled "shortly after" his disability first arose. Critically, Cloud did not appeal the denial of Active Football benefits to the Board—although he could have.

Instead, two years later, in 2016, he filed for reclassification to Active Football. In support, Cloud submitted the same documentation that he had submitted in 2014, though he included a 2012 doctor report and a letter he wrote stating that he was cut from his NFL teams because of his mental disorders. He also listed "affective disorder" and "significant memory and attention problems" as disabilities, which he now argues he did not include in his 2014 application.

The Committee denied the 2016 request for reclassification for three reasons. First, there was no evidence of "changed circumstances" since the 2014 award. Second, the Plan instrument did not provide for the requested reclassification outside a 42-month limitations period. And third, the SSA determined that Cloud's disability onset date was December 31, 2008, which is not "shortly after" the date of first disability (presumably, the October 2004 concussion), as 2008 is more than 12 months after 2004.

Unlike in 2014, this time Cloud appealed the Committee's denial of reclassification to the Board. In his appeal, Cloud argued that his total-and-permanent disability arose "shortly after" his October 2004 concussion. And while he did not argue that there were any "changed circumstances," he

asked the Board to *waive* that requirement on the ground that he did not know the full extent of his disability when he previously filed for benefits. He also asked the Board to waive the 42-month limitations period.

The Board denied Cloud's requested reclassification in a letter dated November 23, 2016, again giving three reasons, though the Board's reasons differed slightly from the Committee's. First, the letter stated that Cloud failed to clearly and convincingly show "changed circumstances," which the Board interpreted as "a new or different impairment from the one that originally qualified you for T&P benefits." The impairments listed in the 2016 claim were "the same impairments listed in [the] 2014 application." Second, the letter stated, in conclusory fashion, that Cloud did not meet the requirements for Active Football benefits anyway, because his T&P disability did not arise "shortly after" his disability first arose. Third, the letter stated that Cloud's appeal was untimely because, "according to Plan records, [Cloud] received the decision letter on March 4, 2016," but "the Plan did not receive [Cloud's] appeal until September 2, 2016, two days after the 180-day deadline expired." Thus, the Board denied the appeal.

Cloud sued the Plan under ERISA.

### E

The district court permitted discovery and held a six-day bench trial. "Behind the curtain," said the court, focusing specifically on the November 2016 Board meeting, "is the troubling but apparent reality that these abuses by the Board are part of a larger strategy engineered to ensure that former NFL players suffering from the devastating effects of severe head trauma are not awarded [maximum] benefits."

We summarize the key points:

No. 22-10710

Turns out, the Board was not fully informed about Cloud's case. A Groom paralegal prepared the case summary for Cloud's case, though Board members thought she was a lawyer. Despite having "approximately 100 appeals" set for review at the quarterly meeting, the Board's informal pre-meeting "was done in like 10 minutes with no issues."

The paralegal also wrote the denial letter. Though the Board voted to deny reclassification solely for lack of "changed circumstances," and though the Board did not discuss whether Cloud's appeal was untimely, the letter included both the "shortly after" and "untimeliness" rationales as bases for denying Cloud's claim. Additionally, the denial letter contained several errors: It listed nonexistent Plan sections; it completely overlooked the concussion-specific pathway to Active Football benefits under § 5.4(b); and it said Cloud provided no evidence that he was totally and permanently disabled—even though the Committee had already found him T&P disabled back in 2014. The Board did not review the letter before it was sent out.

F

Ultimately, the district court found for Cloud after the bench trial. In its detailed 84-page memorandum opinion and order, the court blasted the Board for engaging in "tortuous reasoning" and for "cherry-pick[ing] information" to deny Cloud a "full and fair review" of the Committee's denial of reclassification. In short, the Board acted arbitrarily and capriciously in denying reclassification and abused its discretion in denying Cloud's administrative appeal as untimely. Instead of granting a remand to the Plan administrator for another go-round (the usual remedy), the district court ordered a near doubling of Cloud's annual disability benefits to the Active Football maximum of $265,000, plus awarded Cloud more than $1 million in back pay.

The Plan appealed.

No. 22-10710

## II

Our standard of review is complex but clear. "On appeal from a bench trial, this court reviews the factual findings of the trial court for clear error and conclusions of law de novo."[4] "Accordingly, we will not set aside the district court's factual findings unless they are clearly erroneous."[5] But as to other issues, we must "apply the same standard to the Plan Administrator's decision as did the district court."[6]

We thus recite the district court's standard of review. "Challenges to an ERISA plan administrator's denial of benefits are reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[7] "If the plan does grant such discretion, courts review decisions for abuse of discretion."[8] Here, the Plan unequivocally gives its administrators discretion to interpret the Plan and to determine eligibility for benefits. Accordingly, the district court reviewed the NFL Plan's denial of benefits for abuse of discretion. And so do we.[9]

"A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its

---

[4] *George v. Reliance Standard Life Ins. Co.*, 776 F.3d 349, 352 (5th Cir. 2015) (cleaned up); *Bunner v. Dearborn Nat'l Life Ins. Co.*, 37 F.4th 267, 274 (5th Cir. 2022); *Newsom v. Reliance Standard Life Ins. Co.*, 26 F.4th 329, 334 (5th Cir. 2022).

[5] *Newsom*, 26 F.4th at 334.

[6] *George*, 776 F.3d at 352 (quotation marks omitted).

[7] *Mello v. Sara Lee Corp.*, 431 F.3d 440, 443 (5th Cir. 2005) (internal quotation marks omitted).

[8] *Id.*

[9] *George*, 774 F.3d at 352.

No. 22-10710

denial."[10] Still, the abuse-of-discretion standard "requires only that substantial evidence supports the plan fiduciary's decision."[11] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence."[13] "This court's review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end."[14]

## III

The NFL Plan raises numerous challenges on appeal, but we discuss only one because it is dispositive: Cloud cannot show that "changed circumstances" entitle him to reclassification to top-level Active Football benefits.

Under § 5.7(b) of the Plan, a player who has already been awarded T&P benefits (like Cloud) is not eligible for another category of benefits "unless the Player shows by evidence found by the Retirement Board or the . . . Committee to be clear and convincing that, *because of changed*

---

[10] *Id.* at 353 (quoting *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009)).

[11] *Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 694 F.3d 557, 566 (5th Cir. 2012).

[12] *Id.* (internal quotation marks omitted).

[13] *Id.* (internal quotation marks omitted).

[14] *Id.* (cleaned up).

No. 22-10710

*circumstances*, the Player satisfies the conditions of eligibility for a benefit under a different category of T&P benefits."

Cloud did not, and cannot, demonstrate changed circumstances. In his 2016 appeal to the Board, he acknowledged his need to demonstrate changed circumstances but did not make such a showing—or attempt to; instead, he simply asked the Board to waive that requirement. He thus forfeited any claim to changed circumstances at the administrative level. We therefore cannot consider it.[15] Moreover, the record confirms that Cloud has no evidence that he is entitled to reclassification "because of changed circumstances." The absence of changed circumstances was the basis for the Board's denial, and it was not an abuse of discretion on this particular record. We therefore have no choice but to reverse the district court's judgment.

We briefly explain why we reject Cloud's arguments to the contrary.

First, Cloud argues that he presented evidence of changed circumstances between his 2014 and 2016 applications. He points to the 2012 doctor report that he included in his 2016 application. He also points to (what he calls) new disabilities—or at least concussion symptoms—that he listed in his 2016 application, such as "affective disorder" and "significant memory and attention problems."[16] But Cloud did not raise these to the Board as a

---

[15] *See Gomez v. Ericsson, Inc.*, 828 F.3d 367, 374 (5th Cir. 2016) ("He tries a new argument not raised before the administrator . . . . But we cannot consider an argument that a plan did not first have the opportunity to assess.").

[16] These were not *new* disabilities or concussion symptoms. Cloud's 2014 application mentioned "affective mental disorder," and included the SSA award's findings, which referenced his "affective disorder." Those findings also stated that Cloud was "markedly limited in his ability to maintain attention and concentration" and that Cloud was "moderately limited" in his "ability to remember location and work-like procedures" and "instructions."

basis for finding changed circumstances, so we cannot consider them.[17] Cloud also attempts to introduce other evidence of changed circumstances in his brief to this court. For instance, he points to testimony from Cloud's ex-wife saying that he "flipped the switch" from 2014 to 2016 "and became someone that [she] didn't know anymore." But these arguments are likewise forfeited because he did not raise them to the Board.[18] Further, the new evidence he cites in his brief is from the trial court record, not the administrative record, and therefore cannot be a basis for finding that the Board abused its discretion.[19]

Second, Cloud argues that the Board cannot rationally rely on changed circumstances to deny him reclassification, as the district court found that the Board "has never adhered to a defined or uniform interpretation of 'changed circumstances.'" The district court's finding is supported by substantial evidence, as trial testimony revealed that the Board's definition of the phrase "has no set definition" and is constantly "evolving." Indeed, the district court identified at least eight variations of the definition. For example, the court noted that changed circumstances "means something other than the same basis for the initial decision"; means "a change in the Player's condition"; means "a change in the Player's *physical* condition"; or means "a new or different impairment that warrants a different category of benefits."

There is some superficial merit to this argument. We have held that a court's review for abuse of discretion includes considering, among other

---

[17] *See id.*

[18] *See id.*

[19] *Offutt v. Prudential Ins. Co. of Am.*, 735 F.2d 948, 950 (5th Cir. 1984) ("In reviewing an administrator's decision, a court must focus on the evidence before the administrator at the time his final decision was rendered.").

things, "whether the administrator has given the plan a uniform construction."[20]

But the variations identified by the district court are not significant, and Cloud doesn't show how he could meet the standard for "changed circumstances" under *any* of those definitions anyway. Because the Plan instrument gives the Board absolute discretion to construe the terms of the Plan, we uphold the Board's denial on this ground since the Board's definition of the changed circumstances in Cloud's case—"a new or different impairment from the one that originally qualified [Cloud] for T&P benefits"—was a reasonable and fair reading of the phrase.[21]

While we share the district court's unease with a daunting system that seems stacked against disabled ex-NFLers, we cannot say that the Board abused its discretion in denying reclassification due to Cloud's failure to show changed circumstances. We thus hold that the district court erred in awarding Active Player benefits. Because we rule on this narrow ground, we do not address the Plan's other proffered bases for reversal. Additionally, because Cloud is not entitled to reclassification, we do not address Cloud's arguments that the Board's denial must be overturned on the ground that it denied him a full and fair review in violation of ERISA's procedural requirements.

"Remand to the plan administrator for full and fair review is usually the appropriate remedy when the administrator fails to substantially comply

---

[20] *Porter v. Lowe's Co., Inc.'s Bus. Travel Acc. Ins. Plan*, 731 F.3d 360, 364 n.8 (5th Cir. 2013) (internal quotation marks omitted).

[21] *See McCorkle v. Metro. Life Ins. Co.*, 757 F.3d 452, 459 (5th Cir. 2014); *see also Porter*, 731 F.3d at 364 n.8 (another component of the abuse-of-discretion analysis—indeed, perhaps the most important one—is "whether the interpretation is consistent with a fair reading of the plan" (internal quotation marks omitted)).

with the procedural requirements of ERISA."[22] An outright award of benefits is generally inappropriate, particularly when "the claimant might not otherwise be entitled to them under the terms of the plan."[23] We have also noted, though, that even administrative remand is not appropriate "where remand would be a useless formality."[24] In particular, a remand is "a useless formality where 'much, if not all, the objective evidence supports the conclusion that the plaintiff is not covered under the terms of the policy.'"[25] Here, even assuming the NFL Plan denied Cloud a full and fair review, "no amount of [additional] review can change the fact that [Cloud] is ineligible for [reclassification] under the plain terms of the . . . Plan."[26] Remand for more proceedings before the Board would therefore be a useless formality.

## IV

In sum, Cloud's claim fails because he did not and cannot show any changed circumstances entitling him to reclassification to the highest tier of benefits. He could have appealed the 2014 denial of reclassification to Active Football status—but he did not do so. Instead, Cloud filed another claim for reclassification in 2016, which subjected him to a changed-circumstances requirement that he cannot meet—and did not try to meet. He therefore forfeited the issue at the administrative level and at any rate has not pointed to any clear and convincing evidence supporting his claim.

The district court's findings about the NFL Plan's disregard of players' rights under ERISA and the Plan are disturbing. Again, this is a Plan

---

[22] *Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 157 (5th Cir. 2009).

[23] *Id.* at 158.

[24] *Id.* at 158 n.22.

[25] *Id.* (citation omitted) (alterations accepted).

[26] *Clark v. CertainTeed Salaried Pension Plan*, 860 F. App'x 337, 340 (5th Cir. 2021).

No. 22-10710

jointly managed by the league and the players' union. And we commend the trial court judge for her diligent work chronicling a lopsided system aggressively stacked against disabled players. But we also must enforce the Plan's terms in accordance with the law. Because Cloud has not shown evidence of changed circumstances, we REVERSE the district court and REMAND with instructions to enter judgment in favor of the NFL Plan.